```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD STONE & LESLEY BLACKNER,           :
                                            :
                           Plaintiffs,     :
                                            :
           -against-                       :       17-CV-1574 (VEC)
                                            :
SUTTON VIEW CAPITAL, LLC, MICHAEL          :       ORDER AND OPINION
WINSTON, and SUTTON VIEW PARTNERS,         :
L.P.,                                       :
                                            :
                           Defendants.     X
------------------------------------------------------------
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/8/17

VALERIE CAPRONI, United States District Judge:

Plaintiffs Richard Stone and Leslie Blackner bring this action against Defendants Michael Winston, Sutton View Capital, and Sutton View Partners based on investment advice they received. Defendants have counterclaimed against Plaintiff Stone for fraud in the inducement and, in the alternative, breach of contract. Plaintiffs have moved to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead fraud with particularity. They have also moved to strike certain exhibits attached to the counterclaims.[1] Plaintiffs' motion to dismiss is granted as to the fraudulent inducement counterclaim and denied as to the breach of contract counterclaim. Plaintiffs' motion to strike is denied.

---

[1] Although the counterclaims are asserted only against Stone, Plaintiffs moved together in the event that the counterclaims were intended or construed to be asserted against them both. *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims and to Strike Certain Exhibits ("MTD") [Dkt. 113] at 1 n.1.

## I. BACKGROUND

The counterclaims alleged by the Defendants relate to an advisory agreement through which Winston's company, Sutton View Capital, was to provide investment services to Plaintiffs. The transactions at issue involved the execution of two "swaps" related to a de-merger of assets by Yahoo. *See* Defendants' Amended Answer ("Am. Answer") [Dkt. 109] ¶¶ 33, 36; Defendants' Counterclaim ("Counterclaim") [Dkt. 109] ¶¶ 2, 3 8.[2] According to the Counterclaim, Stone, a lawyer, knew that he and his wife, Blackner, would be executing the transaction in their individual capacities, but he nonetheless drafted the written advisory agreement to bear the name of their entity, Blackner Stone & Associates, for tax and financial purposes. Counterclaim ¶¶ 1, 9–11. Stone allegedly asserted that the written agreement, which included provisions that limited the scope of the advisory relationship and the Defendants' liability, would nonetheless govern the relationship, and that putting the contract in the entity's name "would have no material impact" on the Defendants. *Id*. ¶¶ 13–14. Defendants allegedly relied on Stone's representations based on their prior course of dealing and Stone's expertise in the securities field. *Id*. ¶¶ 14, 21.

Stone executed the written advisory agreement on or about April 1, 2015. Counterclaim ¶ 17. According to Defendants, Stone knew the representations he made about the agreement's import were false, and they were intended to induce Defendants to provide advisory services as set forth in the agreement, while using the substitution of his entity as the named party as a means to avoid his responsibilities under the contract and evade the material terms upon which the parties had agreed. *Id*. ¶¶ 15, 18, 19. Stone allegedly never disavowed the agreement or

---

[2] Because Defendants filed their Answer and Counterclaim in the same document, but restarted paragraph numbering in the portion containing their counterclaims, the Court will refer to the Answer and Counterclaim as if they were filed separately for ease of citation.

2

suggested that the parties were operating pursuant to an alternative agreement; Winston terminated the written advisory agreement on December 31, 2015. *Id*. ¶¶ 23, 25. Stone allegedly also repeatedly promised to pay the Initial Fee of $41,125 that was due under the written advisory agreement, although that amount has to date not been paid. *Id*. ¶¶ 22, 24, 27. To the extent that the written advisory agreement does not govern the advisory relationship, the Defendants allege that the relationship was governed by an oral agreement that has the same terms as the written agreement, for which the Initial Fee is due. *Id*. ¶¶ 32–39. Defendants' Counterclaim thus alleges two claims: fraud in the inducement of the written advisory agreement and breach of the alternative oral contract.

## II.     DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation

omitted).

## A. Defendants' Counterclaims Were Procedurally Proper

Plaintiffs allege that the counterclaims were procedurally improper because Defendants did not move for leave to amend before adding the counterclaims to their Amended Answer. *See* MTD at 22–23; Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims and to Strike Certain Exhibits ("Reply") [Dkt. 120] at 10.

A party may amend its pleading as a matter of course within 21 days after filing it. Fed. R. Civ. P. 15(a)(1)(A). While amending a pleading to add a counterclaim was formerly governed by Rule 13, that changed in 2009 so that Rule 15 is now the sole rule governing amendment of a pleading to add a counterclaim. *See* Fed. R. Civ. P. 13, 15 advisory comm. nn.; *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421, 483 (S.D.N.Y. 2016) (citations omitted). Defendants filed their Answer on May 30, 2017, and filed the Amended Answer and Counterclaim 21 days later on June 20, 2017. *See* Defendants' Answer ("Answer") [Dkt. 106]; Am. Answer; Counterclaim. Accordingly, the Defendants were not required to seek leave to amend their Answer in order to assert the counterclaims.[3]

---

[3] The only case that Plaintiffs cite to advance their argument that the counterclaim is procedurally improper is an unreported 1987 case from Illinois, which predates the 2009 Amendments by more than 20 years. *See* MTD at 22–23 (citing *Fuente v. Honeggers & Co., Inc.*, No. 83 C 00061, 1987 WL 9019 (N.D. Ill. Apr. 2, 1987)). It is clear that this case is no longer relevant on the issue for which it is cited in light of the 2009 Amendments. Counsel for the Plaintiffs is reminded that the New York Rules of Professional Conduct provide that a "lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." NY RPC R. 3.1(a).

## B. Defendants' Counterclaim for Fraudulent Inducement is Dismissed

Plaintiffs assert that Defendants' fraudulent inducement claim fails for a variety of reasons, including that they failed to plead reasonable reliance.[4] *See* MTD at 6–19; Reply at 4–10.

To prove fraudulent inducement under New York law,[5] the plaintiff must establish by clear and convincing evidence "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . . ; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (citation omitted); *see also Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747, 772 (S.D.N.Y. 2014) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)). Fraud claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which require the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)); Fed. R. Civ. P. 9(b).

Reasonable reliance, as an essential element of the claim, must also be pled with particularity. *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005)

---

[4] In addition, Plaintiffs argue the fraudulent inducement claim should be dismissed because the Defendants failed to plead a material misrepresentation with particularity, they failed to plead scienter, they failed to plead that Plaintiffs' actions caused them harm, they failed to plead any fraud-based damages, the written agreement contains a merger clause and a "no oral amendment" provision, Defendants are estopped from asserting their counterclaim based on prior arguments, and the limitation of liability provisions do not survive the termination of the written agreement. *See* MTD at 6–12, 14–19; Reply at 4–10.

[5] The parties do not dispute the application of New York law in this case. The written advisory agreement supporting the fraudulent inducement claim states that it is governed by New York law, and the terms of the alleged oral agreement are the same as the terms of the written agreement. *See* Advisory Agreement [Dkt. 109-20] ¶ 10; Counterclaim ¶ 34.

(citations omitted). "[W]hether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss . . . ." *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 355 (S.D.N.Y. 2017) (citing *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007)). "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (citing *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1541–43 (2d Cir. 1997); *Harsco Corp. v. Segui*, 91 F.3d 337, 345–46 (2d Cir. 1996)).

"Courts have routinely held that it is unreasonable for a party to rely on the advice of adversary counsel [] when both parties are aware that adverse interests are being pursued." *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 257 (S.D.N.Y. 2008) (citing *Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir. 1993); *I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc.,* No. 01 Civ. 4019, 2004 WL 444071, *3 (S.D.N.Y. Mar. 11, 2004); *Petrello v. White,* 412 F. Supp. 2d 215, 227 (E.D.N.Y. 2006); *Russell–Stanley Holdings, Inc. v. Buonanno,* 327 F. Supp. 2d 252, 257 (S.D.N.Y. 2002)) (internal quotation marks omitted). In other words, a "plaintiff cannot properly plead reasonable reliance on the representations of another party's counsel . . . to support her claim of fraud." *Cascardo v. Stacchini*, 100 A.D.3d 675, 676 (2012) (citing *Mann v Rusk*, 14 A.D.3d 909, 909–910 (2005)). Additionally, a sophisticated party cannot justifiably rely on alleged misrepresentations if it "failed to make use of the means of verification that were available to it." *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 703 (S.D.N.Y. 2013), *aff'd*, 552 F. App'x 24 (2d Cir. 2014) (quoting *HSH Nordbank AG v. UBS AG,* 95 A.D.3d 185, 194–95 (1st Dep't 2012)) (internal quotation marks omitted).

Defendants contend that, based on the parties' prior dealings and Stone's legal expertise, they relied on Stone's representations as to the legal import of their entering into a contract with a corporate entity rather than with Plaintiffs personally. Counterclaim ¶¶ 1, 14, 21. As a matter of law (and common sense), that reliance was not reasonable. Just as it is not reasonable to rely on the legal opinions of a counterparty's counsel, it is not reasonable to rely on the legal opinions of a contractual counterparty who is him- or herself a lawyer. Defendants are a sophisticated businessman and sophisticated entities planning to advise on a complex and sophisticated financial transaction. They no doubt could have retained and consulted their own counsel in negotiating the agreement, yet they apparently failed to do so. While Defendants may now regret their decision not to consult with an attorney regarding Plaintiffs' proposal to use his company as the contractual counterparty, regret is not the same as reasonable reliance. Because Defendants have failed to plead reasonable reliance, which is a necessary element of their fraudulent inducement claim, Plaintiff's motion to dismiss this counterclaim is granted.[6]

### C. Defendants' Counterclaim for Breach of Contract Survives

Plaintiffs assert that Defendants' breach of contract claim fails for a variety of reasons. They contend that Defendants fail to plead the existence of a contract between Defendants and Plaintiffs, that the written advisory agreement's provisions preclude a breach of contract counterclaim, that Defendants are estopped from pursuing this claim because of their prior factual assertions regarding the written advisory agreement, and that the claimed contract is a guarantee that must be in writing per New York's statute of frauds. *See* MTD at 19–22.

Under New York law, the elements of a breach of contract claim include: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."

---

[6] In reaching this conclusion, the Court does not opine on the other grounds that Plaintiffs raised with regard to the fraudulent inducement counterclaim.

7

*Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000) (quoting *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.1998)) (internal quotation marks omitted)

### i. Defendants Sufficiently Allege a Contract

Plaintiffs argue that the Defendants have failed to allege an agreement between the parties by pointing to the written advisory agreement and arguing that Plaintiffs cannot be bound because they are not parties to that agreement. *See* MTD at 19–20. Plaintiffs miss Defendants' argument entirely, which is that Plaintiffs breached an oral agreement that exists *separate and apart* from the written advisory agreement, the relevant terms of which are the same as those contained in the written agreement. *See* Counterclaim ¶¶ 32–39. Defendants do not seek to bind the Plaintiffs to the written advisory agreement as third parties. Accordingly, the Court finds that Defendants have properly alleged the existence of an oral contract.[7]

### ii. The Written Advisory Agreement Does Not Preclude the Counterclaim

Plaintiffs next assert that the terms of the written advisory agreement, by including a merger clause and a "no oral amendment" provision, precludes the breach of contract claim. *See* MTD at 20. Again, Plaintiffs' arguments are misplaced. Defendants do not argue that the breached contract is an orally-modified version of the written advisory agreement; they instead allege a separate agreement whose relevant terms parallel those contained in the written agreement. *See* Counterclaim ¶¶ 32–39. Plaintiffs' argument fails, as the written agreement does not preclude the counterclaim.

### iii. The Defendants Are Not Estopped from Pursuing the Breach of Contract Claim

---

[7] A valid contract under New York law requires the familiar elements of offer, acceptance, consideration, mutual assent, and an intent to be bound. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citations omitted). The Court is satisfied that the counterclaim alleges these elements.

Plaintiffs argue that the Defendants are estopped from alleging breach of contract because they previously argued that the written contract between Plaintiffs' entity and Defendants was the operative agreement.  *See* MTD at 20–21.

A party is permitted to plead alternative and inconsistent claims, so long as the party's counsel certifies that, to the best of his or her knowledge, those claims have factual and non-frivolous legal support.  *See* Fed. R. Civ. P. 8(d), 11(b).  Defendants "may assert contradictory statements of fact only when legitimately in doubt about the facts in question."  *2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 78 (2d Cir. 2010) (quoting *American Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455, 1461 (7th Cir. 1996)) (internal quotation marks omitted).

There appears to be legitimate doubt as to what constitutes the operative agreement between the parties.  The Rules permit the Defendants to plead their claims in the alternative, and the Court has no basis to question the Defendants' statement that their pleadings have been made in good faith.  *See* Defendants' Response in Opposition to Plaintiffs' Motion to Dismiss Counterclaims and Strike Certain Exhibits and Memorandum of Law ("Defs.' Opp.") [Dkt. 118] at 21.  That the Defendants previously made arguments based on the written advisory agreement does not estop them from pleading legitimate, alternative arguments when the facts are unsettled and the controlling agreement is in doubt.  Of course, to prevail at trial Defendants will have to adduce proof of the existence of an oral agreement.

### iv. The Statute of Frauds Does Not Bar the Counterclaim

Plaintiffs argue that New York's statute of frauds bars Defendants' counterclaim because Defendants have alleged a guarantee by Stone to fulfill his entity's obligations under the written advisory agreement, and such contracts must be in writing.  *See* MTD at 22.  Plaintiffs are

correct that New York's statute of frauds requires that agreements to "answer for the debt, default or miscarriage of another person" must be in writing. N.Y. Gen. Oblig. Law § 5-701. But, as discussed above, that is not Defendants' theory. Defendants claim that there is a separate, oral contract with terms that parallel the written advisory agreement; Defendants are not alleging a guarantee of the written agreement. *See* Counterclaim ¶¶ 32–39. Accordingly, Plaintiffs' arguments fail as to the statute of frauds.

### D. There is No Basis to Strike the Counterclaim Exhibits

Plaintiffs' assert that 45 of the 55 exhibits that Defendants attached to their counterclaim were improperly attached. *See* MTD at 23–25.

Under Rule 10, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Additionally, the Second Circuit has ruled that courts may consider "other documents, apart from written instruments under Rule 10(c), at the motion to dismiss stage, such as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit . . . ." *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 566 (2016) (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)) (internal quotation marks omitted).

Second Circuit precedent suggests that these exhibits were properly attached to the counterclaims. The Court need not reach this issue, however, as it has not relied on any of the exhibits that were attached to the Answer and Counterclaim except the written advisory agreement, the attachment of which the Plaintiffs have not challenged. *See* MTD at 24 n.10. Accordingly, Plaintiffs' motion to strike is denied.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to dismiss is granted with respect to the fraudulent inducement counterclaim and denied with respect to the breach of contract counterclaim, and Plaintiffs' motion to strike is denied. The Clerk of Court is instructed to terminate Docket Entry 112.

**SO ORDERED.**

Date: December 8, 2017
New York, New York

                                        **VALERIE CAPRONI**
                                      **United States District Judge**